**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

DEANNA K. ORTIZ,

     Plaintiff,

v.

    Civ. Case No.:3:18-cv-01347-D

ENHANCED RECOVERY COMPANY,
LLC,

     Defendant.

---

**DEFENDANT, ENHANCED RECOVERY COMPANY, LLC'S**
**BRIEF IN SUPPORT OF MOTION FOR SUMMARY FINAL JUDGMENT**

**SMITH, GAMBRELL & RUSSELL, LLP**

Scott S. Gallagher
Florida Bar No. 0371970
Email: ssgallagher@sgrlaw.com
Richard D. Rivera
Florida Bar No. 108251
Email: rrivera@sgrlaw.com
50 North Laura St, Suite 2600
Jacksonville, FL 32202
(904) 598-6100
(904) 598-6300 (fax)

and

John D. Rosenberg
Texas State Bar No. 17269500
**JOHN ROSENBERG LAW FIRM, PLLC**
300 N. Coit Road, Suite 1125
Richardson, Texas 75080
214-969-5454 phone
214-969-5902 fax
johnr@johnrosenberglaw.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

I.      Introduction.................................................................................................1

         A.      Issues Before the Court.................................................................1

         B.      Summary.........................................................................................1

                  1.      Fair Debt Collection Practices Act ...................................1

                  2.      Texas Debt Collection Act.................................................2

         C.      Legal Standard ...............................................................................3

II.     Statement of Material Facts .......................................................................3

III.    Including the statutorily required 1692g validation notice in two sequential
        letters to a consumer does not violate the Federal Act ............................4

         A.      Section 1692g of the Federal Act requires collectors to provide a
                  thirty-day validation period and to notify consumers of
                  those rights ....................................................................................5

         B.      Providing a consumer with additional time to dispute or seek
                  validation of a debt is not false, deceptive, or misleading under
                  the Federal Act...............................................................................7

                  1.      Ms. Ortiz's theory has been repeatedly rejected throughout
                           the country .......................................................................7

                  2.      ERC's practice of sending multiple validation notices has
                           been expressly approved as a pro-consumer policy..........10

                  3.      Any confusion caused by ERC's letter would not violate the
                           Federal Act as it would not materially and adversely affect
                           Ms. Ortiz's decision-making.............................................11

         C.      Ms. Ortiz's theory of liability contravenes the clear, stated
                  policy and legislative intent of the Federal Act—encouraging
                  greater protections for consumers ................................................14

IV.     Likewise, ERC is entitled to judgment as a matter of law under the
        Texas Act .................................................................................................16

         A.      Ms. Ortiz's claims under the Texas Act fail for the same reasons
                  as her claims under the Federal Act..............................................16

B.      Ms. Ortiz's claims under the Texas Act are further barred by the
        act's civil remedy provision..........................................................................18

V.      Conclusion ................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Arend v. Total Recovery Servs., Inc.*, No. 05-cv-3064 (DLI)(JMA), 2006 WL
2064977 (E.D.N.Y. July 24, 2006) ...................................................................... 9, 10

*Bell v. Itawamba Cnty. Sch. Bd.*, 774 F.3d 280 (5th Cir. 2014) ..................................... 3

*Brenker v. Creditors Interchange, Inc.*, No. 03 Civ. 6500 LTS DFE, 2004 WL
594502 (S.D.N.Y. Mar. 25, 2004) ........................................................................ 10

*Bridges v. Performant Recovery, Inc.*, No. 5:15-CV-38 (CAR), 2015 WL 8773340
(M.D. Ga. Dec. 14, 2015) ..................................................................................... 8, 9

*Canteen Corp. v. Republic of Tex. Props., Inc.*, 773 S.W.2d 398 (Tex. App. 1989).................. 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................ 3

*Curry v. AR Resources, Inc., No. 16-517(RMB/KMW),* 2016 WL 8674254 (D.N.J.
Nov. 4, 2016) ......................................................................................................... 8, 13

*DiRosa v. North Shore Agency, Inc.*, 56 F.Supp.2d 1039 (N.D. Ill. 1999).................................. 10

*Enis v. Bank of America, N.A.*, No. 3:12-cv-0295-D, 2013 WL 1721961 (N.D. Tex.
Apr. 22, 2013) ....................................................................................................... 17

*Farkas v. Wells Fargo Bank, N.A.*, No. 03-14-716-CV 2016 WL 7187476 (Tex. App.
3d Dist. 2016)........................................................................................................ 19

*FIA Card Servs., N.A. v. Gachiengu*, 571 F. Supp. 2d 799 (S.D. Tex. 2008)............................. 17

*Gesten v. Phelan Hallinan*, 57 F. Supp. 3d 1381 (S.D. Fla. 2014)........................................ 10, 15

*Gomez v. Niemann & Heyer*, L.L.P., No. 1:16-cv-119 RP, 2016 WL 3562148
(W.D. Tex.  June 14, 2016).................................................................................. 2, 12, 16, 19

*Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009) .......................................................... 12

*Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488 (5th Cir. 2004)................. 7, 12

*Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443 (5th Cir. 1995) ........................................ 3

*Hsu v. Enhanced Recovery Company, LLC*, No. 1:17-cv-128-RP (W.D. Tex. Jan. 5, 2018) ...... 17

*Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002) ...................................................................... 11

*Langley v. Weinstein & Riley, P.S.*, No. H-12-1562, 2013 WL 2951057 (S.D. Tex.
    June 14, 2013) ................................................................................................................. 17

*Martinez v. Scott*, 2011 WL 3566970 (S.D. Tex. Aug. 12, 2011) .......................................... 19, 20

*McMurray v. ProCollect, Inc.*, 687 F.3d 665 (5th Cir. 2012) ................................................... 6, 7

*Montgomery v. Trident Asset Management*, Civ. No. 15-6616(MAS)(LHG) (D.N.J.
    May 12, 2016) ..................................................................................................................... 8

*Paige v. Waukesha Health System, Inc.*, No. 12-C-0601, 2013 WL 3560944 (E.D. Wis.
    July 11, 2013) ..................................................................................................................... 9

*Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002) ..................................................... 12, 14, 15

*Schwartz v. Enhanced Recovery Company, LLC*, No. 1:15-cv-1518-CBA-SMG, Dkt. 29
    (E.D.N.Y. Mar. 30, 2016) ................................................................................................ 11

*Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909 (5th Cir. 1992) ................................................... 3

*Smith v. Regional Transit Authority*, 827 F.3d 412 (5th Cir. 2016) ........................................... 3

*West v. State*, 212 S.W.3d 513 (Tex. App. 2006) ...................................................................... 19

*Young v. G.L.A. Collection Co., Inc.*, No. 1:11-cv-489-WTL-MJD, 2011 WL 6016650
    (S.D. Ind. Dec. 1, 2011) ................................................................................................... 10

## Federal Statutes

15 U.S.C. §1692, et seq. ................................................................................................... *passim*

## State Statutes

Tex. Fin. Code Ann. §392, et seq. ................................................................................... *passim*

## Rules

Fed. R. Civ. P. 56(a) ................................................................................................................. 3

## Other Authorities

S. REP. NO. 95-382, AT 1-2, *reprinted in* 1977 U.S. Code Cong. & Admin. News 1696 .......... 14

## I.     Introduction

### A.     Issues Before the Court

Plaintiff, Deanna Ortiz ("Ms. Ortiz"), alleges Defendant, Enhanced Recovery Company, LLC ("ERC") violated the Fair Debt Collection Practices Act (the "Federal Act") and the Texas Debt Collection Act  (the "Texas Act") by sending her two letters, each of which contained language—expressly required by section 1692g of the Federal Act—notifying Ms. Ortiz of her ability to have her account verified, and providing Ms. Ortiz thirty days to respond. Ms. Ortiz contends that including section 1692g's language in the second letter violated the Federal Act's and the Texas Act's prohibitions on false or deceptive statements. But contrary to Ms. Ortiz's claims, sending multiple validation notices and providing a consumer with an additional opportunity to seek verification of an account does not violate either the Federal Act or the Texas Act. Accordingly, ERC is entitled to judgment as a matter of law.

### B.     Summary

Ms. Ortiz asserts claims under two statutes against ERC, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* and the Texas Debt Collection Act, Tex. Fin. Code § 392.001, *et seq.*

#### 1.   Fair Debt Collection Practices Act

To prevail on a claim under the Fair Debt Collection Practices Act, a plaintiff must show that:

1.  The defendant is a "debt collector" as defined by the Federal Act;

2.  the debt collector took some action with respect to the plaintiff concerning a "debt" as defined by the Federal Act; and

3.  the debt collector violated a substantive provision of the Federal Act.

*See* 15 U.S.C. §§ 1692a, 1692k. Ms. Ortiz claims that ERC violated sections 1692, 1692e(2)(A), and 1692e(10) of the Federal Act. These provisions prohibit:

1.  "Using any false, deceptive, or misleading representation or means in connection with the collection of any debt[;]"[1]

2.  Falsely representing "the character, amount, or legal status of any debt;"[2] and

3.  "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."[3]

## 2.  Texas Debt Collection Act

To prevail on claims under the Texas Debt Collection Act, a plaintiff must show that:

1.  The defendant is a "debt collector" as defined by the Texas Act;

2.  the debt collector took some action with respect to the plaintiff concerning a "debt" as defined by the Texas Act;

3.  the debt collector violated a substantive provision of the Texas Act; and

4.  the violation caused recoverable damages; or

5.  the plaintiff is entitled to injunctive relief to enjoin alleged violations.

*See* Tex. Fin. Code §§ 392.304, 392.403; *See Gomez v. Niemann & Heyer*, L.L.P., No. 1:16-cv-119 RP, 2016 WL 3562148, at *6 (W.D. Tex. June 14, 2016). Ms. Ortiz claims that ERC violated sections 392.304(8) and 392.204(19) in sending her letters. These sections prohibit:

1.  "misrepresenting the character, extent, or amount of a consumer debt[;]"[4] and

---

[1] 15 U.S.C. § 1692e.
[2] 15 U.S.C. § 1692e(2)(A).
[3] 15 U.S.C. § 1692e(10).
[4] Tex. Fin. Code § 392.304(8).

2. "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."[5]

## C.    Legal Standard

A court properly grants summary judgment where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Smith v. Regional Transit Authority*, 827 F.3d 412, 417 (5th Cir. 2016) (citing Fed. R. Civ. P. 56(a)).[6] However, the nonmovant may not merely rely on conclusory allegations or denials to attempt to create an issue of material issue fact. *Smith*, 827 F.3d at 417 (citing *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995)). Where the nonmovant bears the burden of proof on a claim, the nonmovant must show that there is evidence to support all elements of the claim to defeat summary judgment. *Skotak v. Tenneco Resins, Inc*., 953 F.2d 909, 913 (5th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## II.    Statement of Material Facts

On or about October 4, 2017, ERC sent Ms. Ortiz a letter that "provided the language required under § 1692g of the Federal Act, including the portion: 'Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.'"[7] Compl. at ¶¶ 11-12. Thereafter, on or about February 16, 2018, ERC sent Ms. Ortiz another letter, which was "substantially similar" and included the same section 1692g language quoted above.[8] Compl. at ¶¶ 15-16. Ms. Ortiz does not allege any other facts to support her claims.

---

[5] Tex. Fin. Code § 392.304(19).
[6] When parties cross-move for summary judgment, the motions must be assessed independently, with the court viewing the evidence and inferences in each in the light most favorable to the non-moving party. *Bell v. Itawamba Cnty. Sch. Bd.*, 774 F.3d 280, 290 (5th Cir. 2014).
[7] A true and correct copy of ERC's letter dated October 4, 2017 is attached hereto at App'x. p. 36-37.
[8] A true and correct copy of ERC's letter dated February 16, 2018 is attached hereto at App'x. p. 39-40.

The undisputed facts reflect that, on or about October 3, 2017, the subject account bearing Ms. Ortiz's name and identifying information, was placed with ERC for collection by its customer, AT&T. *See* App'x. at 26, ¶ 7. After receiving the account, ERC began collection efforts by sending letters on the account, including the two letters referenced in the Complaint, and attempting to reach Ms. Ortiz by phone. *Id*. at ¶¶ 8-11. Additionally, ERC reported the subject account to the credit bureaus for the first time on November 26, 2017. *Id*. at ¶ 10.

ERC has ceased attempting to collect on the subject account. ERC's letter dated February 16, 2018 was the last letter that ERC sent on the subject account, and ERC's last attempt to reach Ms. Ortiz by phone was on January 27, 2018. *Id*. at ¶¶ 12-14. On June 3, 2018, ERC deleted its credit reporting related to the subject account. *Id*. Moreover, Ms. Ortiz acknowledged in her Responses to ERC's First Request for Admissions, dated January 17, 2019, that ERC had stopped attempting to collect on the subject account from her, and that she has not received any letters from ERC concerning the subject account after February 2018 letter. App'x. at 9, ¶¶ 5, 9.

Further, Ms. Ortiz has not suffered any actual damages. In her responses to ERC's Request for Admissions, Ms. Ortiz admitted "that [she] did not suffer any actual damages as a result of the conduct alleged in the Complaint." App'x. at 9, ¶ 8. Similarly, in its First Set of Interrogatories, ERC asked Ms. Ortiz to identify by category and amount all actual damages that she sought in this matter, to which Ms. Ortiz responded, "[Ms. Ortiz] has not alleged that she has suffered actual damages." App'x. at 12, ¶ 1. In her deposition, Ms. Ortiz confirmed this response, and confirmed that her position is that she had not suffered any actual damages. App'x. at 23, at 49:8-:17.

**III.    Including the statutorily-required 1692g validation notice in two sequential letters to a consumer does not violate the Federal Act.**

4

Although the factual assertions relating to Ms. Ortiz's claims under the Federal Act are simple and undisputed, her legal reasoning is flawed. The crux of Ms. Ortiz's claim that ERC violated the Federal Act is as follows:

> Because Plaintiff did not dispute the validity of the subject debt within the 30 day window, the representations in the October 2017 letter suggested that the debt would, in fact, be assumed to be valid. The similar representations made in the second dunning letter sent in February 2018 directly cut against that assertion. By again suggesting that if Plaintiff failed to dispute the validity of the subject debt within 30 days of receiving the letter, Defendant would assume the debt to be valid, it clearly did not assume the subject debt was valid as represented in the October 2017 dunning letter. As such, Defendant misrepresented whether and to what extent the subject debt is assumed to be valid.

Compl. at ¶ 25. Ms. Ortiz alleges that the effect of the sequential Letters was to confuse Ms. Ortiz as to her rights, and that ERC "purposefully intended to create a false sense of urgency in Plaintiff with hopes of securing payment." Compl. at ¶ 25. As set forth in detail below, however, a debt collector does not violate the Federal Act by sending multiple validation notices. As such, ERC is entitled to judgment as a matter of law on Ms. Ortiz's claims brought under the Federal Act.

### A. Section 1692g of the Federal Act requires collectors to provide a thirty-day validation period and to notify consumers of those rights.

The first two subsections of section 1692g of the Federal Act work in concert to provide certain protections to consumers and to apprise consumers of their rights. Subsection (a) requires debt collectors to notify consumers within five days of initiating contact with a consumer of specific items. It states:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;

     (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

     (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

     (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

While subsection (a) requires the collector to provide certain information to the consumer, subsection (b) provides substantive rights to consumers. It states:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

*Id.* at (b). Accordingly, subsection (b) gives consumers the right to dispute a debt and to seek verification of the information specified. A collector may violate the Federal Act if it "overshadows" its notice of these rights with other language in its communication with consumers. *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 668 (5th Cir. 2012) (internal citations omitted).

While subsection (b) requires collectors to respond in a certain way to written disputes during the initial thirty-day validation period, it does not limit the ability of a collector to so respond to untimely disputes. Subsection (b) is concerned only with the ***minimum*** period of protection provided by law—thirty days—during which a consumer can require a collector to verify account information. Subsection (b) is silent as to the collector's ability to grant additional

6

protections, or to allow the consumer extra time in which to dispute the debt.  Notably, here, Ms. Ortiz does not allege ERC failed to provide the required notice, consistent with section 1692g(a), nor does she allege ERC failed to honor her substantive validation rights under section 1692g(b).

**B.      Providing a consumer with additional time to dispute or seek validation of a debt is not false, deceptive, or misleading under the Federal Act.**

Section 1692e of the Federal Act states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Similarly, subsection 1692e(2)(A) prohibits "[t]he false representation of the character, amount or legal status of any debt," and subsection 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e(2)(A), 1692e(10).

Claims brought under these provisions of the Federal Act are analyzed under an unsophisticated or least sophisticated consumer standard. *See Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004). While the unsophisticated consumer is assumed to be "neither shrewd nor experienced in dealing with creditors," the unsophisticated consumer standard is not "tied to the very last rung on the sophisticated ladder." *McMurray,* 687 F.3d at 669 (internal citations omitted). This standard serves to shield naïve consumers, as well as protect debt collectors against liability "for bizarre or idiosyncratic consumer interpretations of collection materials." *Id.* (internal citations omitted). Under this standard ERC's letters do not violate the Federal Act.

**1.      Ms. Ortiz's theory has been repeatedly rejected throughout the country.**

Ms. Ortiz's theory of liability is not one of first impression. In fact, it has been brought in, and rejected by, several courts across the country. Undersigned counsel is aware of holdings in at least eight Districts in four Circuits, finding as a matter of law that it is not false, deceptive, or

7

misleading—nor does it otherwise violate the Federal Act—to send a consumer multiple letters containing section 1692g's language. For example, the District of New Jersey has rejected this theory more than once, most recently in *Curry v. AR Resources, Inc.*, where a collector sent the plaintiff a letter containing a thirty-day validation notice, and over a month later, sent a second letter with an identical notice. No. 16-517(RMB/KMW), 2016 WL 8674254 (D.N.J. Nov. 4, 2016). The consumer alleged that the second letter was misleading or could confuse a debtor as to his or her rights. *Id*. at *1. After discussing a litany of cases holding that a second validation notice does not violate the Federal Act, the court dismissed the complaint, holding, "the Court is persuaded by the fact that the [Federal Act] provides a baseline standard of conduct for debt collectors. Behavior which is not inconsistent with that baseline and enlarges the rights of a debtor without initially misrepresenting how those rights may be exercised does not adversely confuse or deceive the least sophisticated debtor as to her rights as guaranteed by the [Federal Act]." *Id*. at *5. *See also Montgomery v. Trident Asset Mgmt.*, Civ. No. 15-6617(MAS)(LHG), Dkt. 13 at 2-3 (D.N.J. May 12, 2016) (slip op.) (granting collector judgment on the pleadings as to claim that sending two validation notices violated the Federal Act).[9]

The Middle District of Georgia has also rejected Ms. Ortiz's theory. *Bridges v. Performant Recovery, Inc.*, No. 5:15-CV-38 (CAR), 2015 WL 8773340 (M.D. Ga. Dec. 14, 2015). In *Bridges*, the collector sent two letters, approximately one month apart, both of which contained the thirty-day validation notice. *Id*. at *1. The consumer alleged that the second letter misrepresented the thirty-day period to dispute the debt. *Id*. at *4. The court rejected this argument and entered judgment on the pleadings, holding, "Defendant's letters are not false or misleading; in fact, both

---

[9] A copy of the *Montgomery* slip opinion is included in the Appendix for the Court's convenience, at App'x 64-66.

letters provided the required [Federal Act] notices and ***did not diminish Plaintiff's rights*** to dispute the debt." *Id*. (emphasis supplied).

Similarly, in *Paige*, the Eastern District of Wisconsin rejected this theory posited by Ms. Ortiz in this action. *Paige v. Waukesha Health System, Inc*., No. 12-C-0601, 2013 WL 3560944 (E.D. Wis. July 11, 2013). In *Paige*, the plaintiff contended that the validation notice in the second letter violated sections 1692e and 1692e(10) of the Federal Act because "it said he could exercise certain rights within thirty days, but the thirty-day time period required by the [Federal Act] had expired." *Id*. The court rejected this claim and dismissed the claims, reasoning that several other courts had found that a second validation notice sent after the thirty-day period following the first notice does not confuse a consumer, does not discourage a consumer from exercising his or her statutory rights, and does not constitute a false or misleading representation. *Id*. at \*9. The court ultimately held, "[t]he second validation notice, after the thirty-day period required by statute expired, neither affected the validity of the first validation notice nor hampered the consumer's exercise of rights during the statutory thirty-day period; thus, the consumer was not adversely affected." *Id*. (internal citations omitted). It continued, "The [Federal Act] does not prevent a debt collector from giving the consumer additional chances or time to dispute the debt, even if the statute does not require it." *Id.*

The Eastern District of New York has rejected Ms. Ortiz's theory on multiple occasions. *See Arend v. Total Recovery Servs., Inc*., No. 05-cv-3064 (DLI)(JMA), 2006 WL 2064977 (E.D.N.Y. July 24, 2006). In *Arend*, the consumer argued that sending a letter including the statement "[y]ou still have time to exercise your rights," after the initial thirty-day validation window was false and deceptive under section 1692e(10) because section 1692g requires collectors to give only one thirty-day window. *Id*. at \*3. The Eastern District of New York found

that the Federal Act **does not limit** the amount of time that a collector can give a consumer to request validation to thirty days, and held that it is "neither deceitful nor false, even to the least sophisticated consumer, for [the collector] to offer [the consumer] additional time to exercise his right to obtain validation of the debt." *Id*. at *3.

Indeed, district courts across the country have almost universally rejected similar theories of liability. *See Gesten v. Phelan Hallinan*, 57 F. Supp. 3d 1381 (S.D. Fla. 2014) (granting summary judgment for collector on claim that receiving two letters at different addresses and on different days confused as to the boundaries of the validation period, holding the second letter expanded and emphasized the rights explained in the first letter, a seemingly "prudent practice"); *Young v. G.L.A. Collection Co., Inc.*, No. 1:11-cv-489-WTL-MJD, 2011 WL 6016650 (S.D. Ind. Dec. 1, 2011) (granting judgment on the pleadings and holding that a second validation notice could not adversely affect an unsophisticated consumer); *Brenker v. Creditors Interchange, Inc.*, No. 03 Civ. 6500 LTS DFE, 2004 WL 594502 (S.D.N.Y. Mar. 25, 2004) (granting summary judgment for collector and holding, "[h]ere, the two letters created no reasonable possibility of confusion in derogation of the debtor's rights); *DiRosa v. North Shore Agency, Inc.*, 56 F. Supp. 2d 1039 (N.D. Ill. 1999) (granting summary judgment for collector and holding that subsequent validation notices cannot be deemed false, deceptive, or misleading representations and noting that there are valid reasons for including subsequent validation notices).

### 2.    ERC's practice of sending multiple validation notices has been expressly approved as a pro-consumer policy.

Moreover, not only has Ms. Ortiz's theory of liability been rejected throughout the country, but ERC's practice of including the validation notice in successive letters has been expressly approved. *See Schwartz v. Enhanced Recovery Company*, *LLC*, No. 1:15-cv-1518-CBA-SMG,

Dkt. 29 (E.D.N.Y. Mar. 30, 2016) (slip op.).[10] In *Schwartz*, ERC sent two letters containing identical validation notices to a consumer. *Id*. at 2. The consumer sued, alleging that the second letter was misleading in violation of section 1692e of the Federal Act because the letter represented that the plaintiff had an additional thirty days after receipt of the second letter to dispute the debt or request verification when the Federal Act only provides the consumer with one thirty-day period in which to do so. *Id*. at 3. The plaintiff further alleged that the second letter violated the Federal Act because receiving two nearly identical letters with validation language could confuse an unsophisticated debtor. *Id*. The Eastern District of New York dismissed the claim, holding:

> [T]he alleged violation arises from ***a practice that protects consumers***: this notice is part of a form letter that is routinely sent to multiple addresses over the course of several years in order to ensure that at least one of the letters, containing the validation notice, is received. This practice, aimed at informing consumers of their rights, comports with the [Federal Act's] purpose. ***The Court declines to stretch the [Federal Act's] protections in a manner that "would thwart the obvious purpose of the statute."***

*Id*. at 8 (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 127-28 (2d Cir. 2002)) (emphases added).

Here, as in the extensive case law discussed above, there is nothing false, deceptive, or misleading about ERC's letters to Ms. Ortiz. ERC sent two letters to Ms. Ortiz, dated October 4, 2017 and February 16, 2018. These two letters each contained the same validation notice, which tracked the language of section 1692g(a), and stated that a validation request would be honored for thirty days following Ms. Ortiz's receipt of each notice. *See* App'x. at pp. 36-37, 39-40. Ms. Ortiz does not claim that she sought to take advantage of the validation periods referenced in ERC's letters, or that ERC would not have honored validation requests in that period. Accordingly, the letters are not false and, as discussed in the above case law, they do not violate the Federal Act.

3. **Any confusion caused by ERC's letter would not violate the Federal Act as it would not materially and adversely affect Ms. Ortiz's decision-making.**

---

[10] A copy of the *Schwartz* slip opinion is included in the Appendix for the Court's convenience at App'x 53-63.

Moreover, any imaginable confusion purportedly created by ERC's second letter would be wholly immaterial and, therefore, not actionable. A statement must cause a consumer to believe something untrue that would have influenced his or her decision-making to meet the standard of materiality employed by courts in the Fifth Circuit. *See Gomez v. Niemann & Heyer*, L.L.P., No. 1:16-cv-119 RP, 2016 WL 3562148, at *6 (W.D. Tex. June 14, 2016) ("The ultimate question in each is whether the unsophisticated or least sophisticated consumer would have been led by the debt collection letter into believing something untrue that would have influenced their decision-making.") (citing *Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009); *Goswami*, 377 F.3d at 495; *Peter v. GC Servs. L.P.*, 310 F.3d 344, 349 (5th Cir. 2002)). That is, even if a letter contains a technically false statement, or creates minor confusion, it is not actionable unless it can actually harm the consumer. ERC's letters both used statutory language and the second letter granted Ms. Ortiz additional time to request validation of her account. This additional period of time commenced after the statutorily prescribed thirty-day period expired. Thus, there is no possibility that Ms. Ortiz relied on the second letter to influence how she would respond to the first. For example, it is impossible that she failed to act during the first thirty-ay period as a result of receiving the second letter. Thus any purported confusion caused by ERC granting a second period in which Ms. Ortiz could have her debt verified would have been immaterial.

For example, Ms. Ortiz argues in the Complaint that ERC caused her confusion as to "whether and to what extent the subject debt is assumed to be valid" (Compl. at ¶ 25). Ms. Ortiz alleges that ERC "clearly did not assume the subject debt was valid as represented in the October 2017 dunning letter." Compl. at ¶ 25. As an initial matter, the undisputed facts reflect that ERC took action in accordance with assuming the debt to be valid as ERC reported the subject account to the credit bureaus on November 26, 2017. App'x. at 27, ¶ 10; App'x. at 30. ERC's reporting

12

that it was collecting on an account incurred by Ms. Ortiz clearly demonstrates that ERC assumed the debt to be valid.

Additionally, this purported confusion would be wholly immaterial—it would not have caused Ms. Ortiz to believe something untrue that would have adversely influenced her decision-making. The second letter clearly states that Ms. Ortiz can have her account verified for thirty days, without regard as to whether it was previously, currently, or in the future would be, assumed valid. Moreover, section 1692g of the Federal Act regarding the assumption of validity is limited in scope, as explicitly recognized in section 1692g(c), which provides, "[t]he failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as admission of liability by the consumer." 15 U.S.C. § 1692g(c). The second letter clearly communicates that ERC will honor a request for verification of the account for thirty days from the receipt of the letter.

In fact, the *Curry* court expressly rejected that purported confusion as to whether the account had been previously assumed valid would be material under the Federal Act. The *Curry* court noted that a second validation notice could cause the consumer to question whether "[d]id the debt collector already 'assume this debt is valid,' since I did not respond to the first letter? If so, then why did the debt collector send me a second notice, saying that I have another thirty days?" *Curry*, at 2016 WL 8674254, at *4 n.4. The court rejected that such 'confusion' would be actionable under the Federal Act, reasoning that "simple 'confusion' in the colloquial sense is not legal 'confusion' as contemplated in the Federal Act." It concluded that a litany of questions can be constructed in the fact of any arguable abnormality in a collector's letter, but that does not amount to a violation of the Federal Act unless the consumer would be "confused to the determinant of her rights under the [Federal Act.]" *Id.* at *5.

13

Rather than impede her ability to dispute the debt, ERC's second letter encouraged Ms. Ortiz to do so. As the Federal Act only requires collectors to take certain actions when receiving notice of a dispute after the thirty-day window passes, such as reporting the account as disputed if it subsequently reports the account to a consumer reporting agency,[11] a consumer may find it less advantageous to dispute a debt after allowing the initial thirty-day period to pass. However, in offering Ms. Ortiz the same response for a second thirty-day period (i.e. interruption of collection activity until it provided verification), ERC granted Ms. Ortiz additional time to receive the full benefits of submitting a dispute.

As reflected in the foregoing survey of opinions, the theory Ms. Ortiz asserts in this action has been repeatedly rejected. ERC's second validation notice did not (and indeed, could not) interfere with the initial thirty-day validation period, and a collector's willingness to provide the same protections guaranteed by statute for a second time cannot harm a consumer. As such, this Court should likewise reject Ms. Ortiz's theory in this action.

C.  **Ms. Ortiz's theory of liability contravenes the clear, stated policy and legislative intent of the Federal Act—encouraging greater protections for consumers.**

Courts must interpret the Federal Act in conjunction with its stated purpose. *See Peter,* 310 F.3d at 351-52 ("The Senate Report accompanying the [Federal Act] explained that the purpose of the act was 'to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors.'") (citing S. REP. NO. 95-382, at 1-2, *reprinted in* 1977 U.S. Code Cong. & Admin. News 1696, 1696). In passing the Federal Act, Congress found that there was ample evidence of many debt collectors using "abusive, deceptive, and unfair" tactics in collecting debts and that existing laws were inadequate

---

[11] *See* 15 U.S.C. § 1692e(8).

14

to redress injuries suffered by consumers. 15 U.S.C. § 1692. Congress enacted the Federal Act to "eliminate abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.* at (e). The Federal Act is not meant to be a ceiling of rights, but rather a floor, upon which others are encouraged to build additional protections for consumers. *See id.* ("It is the purpose of this subchapter to . . . promote consistent State action to protect consumers against debt collection abuses."); 15 U.S.C.A. § 1692n ("This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter . . . a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.").

Ms. Ortiz's theory is premised on ERC giving notice to Ms. Ortiz of the benefits of disputing her debt—which ERC is ***required*** to give—and on extending the time ERC will allow her to seek validation of the debt. Ms. Ortiz contends these actions, both of which are beneficial to her, nonetheless violate the Federal Act and are in some way false, deceptive, or misleading. Providing the consumer with additional notice merely increases the chance that the consumer will receive and read the notice, which the *Gesten* court noted seems a "prudent practice." *Gesten*, 57 F. Supp. 3d at 1387. Further, providing consumers with an additional opportunity to receive the benefits and protections provided by the Federal Act, only serves the Federal Act's express purpose.

ERC has complied with both the spirit and the letter of the Federal Act and, indeed, exceeded its requirements for collectors. Ms. Ortiz's claimed confusion is based on a bizarre and

15

idiosyncratic interpretation of ERC's letters that has been found not actionable by almost every court to consider it. This Court should, likewise, reject Ms. Ortiz's theory of liability based on the inclusion of the 1692g notices in the sequential letters.

**IV.    Likewise, ERC is entitled to judgment as a matter of law under the Texas Act.**

Ms. Ortiz asserts that ERC's Letters violated the Texas Act because ERC's "sending of multiple dunning letters . . . constitutes a misrepresentation as to the character of the subject debt and is a generally false and deceptive representation made in connection with the collection of a debt." Compl. at ¶ 32. But the same analysis above applies to Ms. Ortiz's Texas Act claims. Further, the Texas Act's express requirements above the Federal Act prevent Ms. Ortiz from maintaining suit under the Texas Act. As such, ERC is entitled to entry of judgment on Ms. Ortiz's claims under the Texas Act as a matter of law.

**A.    Ms. Ortiz's claims under the Texas Act fail for the same reasons as her claims under the Federal Act.**

In addition to her claim under section 1692e(2)(A) of the Federal Act, Ms. Ortiz brings a claim under the analogous provision of the Texas Act, which prohibits collectors from "misrepresenting the character, extent, or amount of a consumer debt." Tex. Fin. Code § 392.304(8). Ms. Ortiz also asserts a claim under subsection (19), the catch-all provision of the statute, which prohibits "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer. Tex. Fin. Code. § 392.304(a)(19). These claims fail for the same reasons discussed above with regard to Ms. Ortiz's claims under the Federal Act because the Texas Act is to be interpreted consistent with analogous provisions of the Federal Act.

While not identical, the Texas Act and the Federal Act are largely similar, prohibiting similar, if not the same, conduct in most instances. *See Gomez*, 2016 WL 3562148 at *6 ("The conduct prohibited under the [Texas Act] is coextensive with that prohibited under the [Federal

Act], at least insofar as '[t]he same actions that are unlawful under the [Federal Act] are also unlawful under the [Texas Act]."). In recognition of the similarity between the Acts, Texas courts have made up for a dearth of case law interpreting the Texas Act by looking to interpretations of similar provisions of the Federal Act. *See, e.g.*, *id.*; *Enis v. Bank of America, N.A.*, No. 3:12-cv-0295-D, 2013 WL 1721961 (N.D. Tex. Apr. 22, 2013) (Fitzwater, J.); *FIA Card Servs., N.A. v. Gachiengu*, 571 F. Supp. 2d 799, 806 (S.D. Tex. 2008); *Hsu v. Enhanced Recovery Company, LLC,* No. 1:17-cv-128-RP, Dkt. 31 (W.D. Tex. Jan. 5, 2018) (slip op.).[12]

In *Enis*, this Court cited decisions from this District and the Eastern District of Michigan discussing analogous provisions of the Federal Act to resolve a claim under the Texas Act. This Court reasoned, "[b]ecause there are few cases applying § 392.302(4) or prescribing what evidence demonstrates an intent to harass, the court also looks to cases interpreting the similar provision of the [Federal Act]." *Enis*, 2013 WL 1721961, at *5. In *Gachiengu*, the court granted summary judgment for the collector on a claim under the Texas Act based on a discussion of case law interpreting the analogous provision at issue in the Federal Act. 571 F. Supp. 2d at 806-07. In *Langley*, the Southern District of Texas *sua sponte* granted summary judgment under the Texas Act after finding that the briefing on the analogous claim under the Federal Act also established the Texas Act claim. *Langley v. Weinstein & Riley, P.S.*, No. H-12-1562, 2013 WL 2951057, at *9 (S.D. Tex. June 14, 2013). Indeed, in *Hsu*, the Western District of Texas granted summary judgment for ERC on the plaintiff's claims under the Texas Act "on the same grounds that it granted summary judgment in favor of [ERC] against Plaintiff's federal claim" after noting "the Court will interpret the [Texas Act] provisions at issue here in the same fashion as it interprets their federal counterparts." *Hsu*, No. 1:17-cv-128-RP, Dkt. 31, at *12.

---

[12] A copy of the *Hsu* slip opinion is included in the Appendix for the court's convenience at App'x. at 41-52.

In accordance with these district court decisions, this Court should also look to Federal Act interpretations to guide the resolution of Ms. Ortiz's Texas Act claims. Section 392.304(8) of the Texas Financial Code prohibits the same conduct as that prohibited by section 1692e(2)(A) of the Federal Act: using false representations as to the character, amount, or legal status of a debt. Further, section 392.304(a)(19) of the Texas Financial Code prohibits the same conduct as the general prohibition contained in section 1692e of the Federal Act: false or deceptive representations. Accordingly, the reasoning employed in the authorities discussed in Part III above regarding sequential validation notices apply to Ms. Ortiz's Texas Act claims. Consequently, the ample authority finding that it is not false, misleading, or deceptive under the Federal Act to send sequential validation notices counsels that this conduct is likewise not false or deceptive under the Texas Act. Accordingly, ERC's letter do not violate the Texas Act as a matter of law.

### B.  Ms. Ortiz's claims under the Texas Act are further barred by the act's civil remedy provision.

In addition to the clear guidance discussed above regarding the Federal Act, interpretations specific to the Texas Act also show that Ms. Ortiz could not maintain an action under the Texas Act against ERC even if its letters were deceptive under the Texas Act. To prevail on her claims under the Texas Act, Ms. Ortiz must show that she is entitled to receive either actual damages or injunctive relief.[13] Ms. Ortiz cannot make either showing.

As Ms. Ortiz seems to agree, an award of actual damages is not appropriate in this matter. Ms. Ortiz has not pled facts supporting an award of actual damages, and indeed, Ms. Ortiz has admitted that she has not suffered actual damages. In its Request for Admissions, ERC requested that Ms. Ortiz "[a]dmit that [she] did not suffer any actual damages as a result of the conduct

---

[13] Unlike the Federal Act, the Texas Act provides for statutory damages only for violations of certain provisions. *See* Tex. Fin. Code. § 392.403(e). The two provisions under which Ms. Ortiz brings suit are excluded from the award of statutory damages.

alleged in the Complaint," to which Ms. Ortiz responded, "Admit." App'x. at p. 9, ¶ 8. Similarly, in its First Set of Interrogatories, ERC asked Ms. Ortiz to identify by category and amount all actual damages that she sought in this matter, to which Ms. Ortiz responded, "[Ms. Ortiz] has not alleged that she has suffered actual damages." App'x. p. 12, ¶ 1. In her deposition, Ms. Ortiz confirmed this response, and confirmed that she had not suffered any actual damages. App'x. p. 23, at 49:8-17.

Furthermore, Ms. Ortiz cannot establish that injunctive relief is appropriate in this matter. In order to obtain injunctive relief under Texas law, generally, a plaintiff must show (1) imminent harm; (2) irreparable injury; and (3) lack of an adequate remedy at law. *Martinez v. Scott*, No. H-10-1619, 2011 WL 3566970, at *5 (S.D. Tex. Aug. 12, 2011) (*citing West v. State*, 212 S.W.3d 513, 519 (Tex. App. 2006)). While the Texas Act negates the requirement to show irreparable injury, a claimant must still show imminent harm and an inadequate remedy at law to obtain injunctive relief. *Id.* (*citing Canteen Corp. v. Republic of Tex. Props., Inc.*, 773 S.W.2d 398, 401 (Tex. App. 1989)). Where the conduct at issue occurred solely in the past, a consumer cannot maintain a suit for injunctive relief under the Texas Act because there is neither imminent harm nor the inability to obtain a legal remedy for future isolated incidents, if any. *Id.*; s*ee also Gomez*, 2016 WL 3562148, at *18 (reasoning that actual damages must be alleged to maintain action under Texas Act for claims arising from past letters containing allegedly false and deceptive information because "injunctive relief is inappropriate here"); *Farkas v. Wells Fargo Bank, N.A.*, No. 03-14-716-CV 2016 WL 7187476 at *10 (Tex. App. 3d Dist. 2016) (granting summary judgment to collector under Texas Act where allegedly false notices were sent in the past and consumer could not show any risk of future harm based on notices).

Ms. Ortiz's claims, even if meritorious, would not be appropriate for injunctive relief. Like the plaintiff in *Martinez*, Ms. Ortiz is not the subject of ongoing collection activity. Ms. Ortiz admits that ERC's conduct with respect to her has ceased. ERC's last attempt to contact Ms. Ortiz with respect to the subject account occurred in February 2018, when ERC sent the letter dated February 16, 2018. App'x. p. 27, ¶ 12. Indeed, Ms. Ortiz admitted that she had not received any letters from ERC concerning the subject account after the letter dated February 16, 2018, and admitted that ERC is not currently attempting to collect on the subject account from her. App'x. at 9, ¶¶ 5, 9. Accordingly, Ms. Ortiz cannot show that she would be subject to imminent harm if ERC were not enjoined from its alleged violations of the Texas Act. Thus, there are no claims under the Texas Act for which injunctive relief would be an appropriate remedy. As a result, and as a result of Ms. Ortiz's admission that she has suffered no actual damages, Ms. Ortiz's claims under the Texas Act fail as a matter of law.

## V.     Conclusion

Ms. Ortiz asserts claims and theories that have been repeatedly rejected across the country as being contrary to the purpose of debt collection laws. Ms. Ortiz claims that ERC violated the Federal and Texas Acts because it provided her with more—not less—time to obtain verification of her account. This practice, expressly recognized by multiple district courts to be pro-consumer and a "prudent practice" to ensure that a consumer receives at least one notice and opportunity to obtain validation, cannot harm a consumer, nor can it adversely affect a consumer's decision-making with respect to an account. Accordingly, it does not violate either the Federal or Texas Act, as a matter of law, and ERC is entitled to entry of summary judgment in its favor.

**SMITH, GAMBRELL & RUSSELL, LLP**

*/s/ Richard D. Rivera*
Scott S. Gallagher
Florida Bar No. 0371970
Email: ssgallagher@sgrlaw.com
Richard D. Rivera
Florida Bar No. 108251
Email: rrivera@sgrlaw.com
50 North Laura St, Suite 2600
Jacksonville, FL 32202
(904) 598-6100
(904) 598-6300 (fax)

and

John D. Rosenberg
Texas State Bar No. 17269500
**JOHN ROSENBERG LAW FIRM, PLLC**
300 N. Coit Road, Suite 1125
Richardson, Texas 75080
214-969-5454 phone
214-969-5902 fax
johnr@johnrosenberglaw.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| Nathan C. Volheim, Esq. | Taxiarchis Hatzidimitriadis, Esq. |
| Sulaiman Law Group, Ltd. | Sulaiman Law Group, Ltd. |
| 2500 South Highland Ave., Suite 200 | 2500 South Highland Ave., Suite 200 |
| Lombard, Illinois 60148 | Lombard, Illinois 60148 |
| nvolheim@sulaimanlaw.com | thatz@sulaimanlaw.com |
| *Attorney for Plaintiff* | *Attorney for Plaintiff* |

Eric D. Coleman, Esq.
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
ecoleman@sulaimanlaw.com
*Attorney for Plaintiff*

Jason M. Katz, Esq.
Hiersche, Hyaward, Drakeley & Urbach, P.C.
15303 Dallas Parkway, Suite 700
Addison, TX 75001-4610
jkatz@hhdulaw.com
*Attorney for Plaintiff*

*/s/ Richard D. Rivera*
Attorney