IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DEANNA K. ORTIZ, §
 §
 Plaintiff, §
 § Civil Action No. 3:18-CV-1347-D
VS. §
 §
ENHANCED RECOVERY COMPANY, §
LLC, §
 §
 Defendant. §

MEMORANDUM OPINION
AND ORDER

Defendant Enhanced Recovery Company, LLC ("ERC") moves for summary judgment in this action arising from two debt collection letters sent to plaintiff Deanna K. Ortiz ("Ortiz"). The dispositive question presented is whether, by sending two letters—each of which contained an identical 30-day validation notice—ERC made a false, deceptive, or misleading representation within the meaning of either the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), or the Texas Debt Collection Practices Act, Tex. Fin. Code Ann. §§ 392.001-.404 (West 2016 & Supp. 2018) ("TDCPA"). For the following reasons, the court grants ERC's motion for summary judgment and dismisses this action by judgment filed today.

I

The material facts of this case are not in dispute. In October 2017 a subject account bearing Ortiz's name and identifying information was placed with ERC for collection by its customer, AT&T. Shortly thereafter, ERC began collection efforts on the account by sending

letters and attempting to reach Ortiz by phone.

Two of the letters that ERC sent to Ortiz in connection with its collection efforts are the subject of the instant lawsuit. The first letter, sent by ERC to Ortiz in October 2017 (the "October 2017 letter"), "provided the language required under § 1692g of the FDCPA, including the portion: 'Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed valid by us.'" Compl. ¶ 12. The second letter, sent by ERC to Ortiz in February 2018 (the "February 2018 letter"), was "substantially similar" to the October 2017 letter and included an identical § 1692g validation notice. *Id.* at ¶ 15. The February 2018 letter was the last collection effort that ERC made on the subject account.

Ortiz sued ERC in May 2018, alleging that ERC violated the FDCPA and the TDCPA as a result of the "conflicting information evident in both letters." Compl. ¶ 17. ERC now seeks summary judgment on Ortiz's claims. Ortiz opposes the motion.

II

ERC is moving for summary judgment on claims for which Ortiz will have the burden of proof at trial. Because Ortiz will have the burden of proof, ERC's burden at the summary judgment stage is to point the court to the absence of evidence of any essential element of Ortiz's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, Ortiz must go beyond her pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable

jury could return a verdict in Ortiz's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ortiz's failure to produce proof as to any essential element of the claim renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where Ortiz fails to meet this burden. *Little*, 37 F.3d at 1076.

III

The court turns first to the question whether ERC, by sending two debt collection letters with 30-day validation notices, made a false, deceptive, or misleading representation that is actionable under the FDCPA or the TDCPA.

A

"The purpose of the [FDCPA] is to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 668 (5th Cir. 2012) (quoting 15 U.S.C. § 1692(e)).

> Debt collectors are required, within five days of the initial communication regarding a debt, to provide consumers with a written notice that contains this information: (1) "the amount of the debt"; (2) "the name of the creditor to whom the debt is owed"; (3) a statement that unless the consumer "disputes the validity of the debt" within 30 days, the debt collector will assume the debt is valid; (4) a statement that if the consumer notifies the collector that the consumer is disputing the debt in writing within the 30 day period, "the debt collector will obtain verification of the debt [from the creditor] . . . and a copy of [the] verification . . . will be mailed to the consumer"; and (5) "a

> statement that, upon the consumer's written request," the debt collector will give the consumer "the name and address of the original creditor, if different from the current creditor."

*Id.* (quoting 15 U.S.C. § 1692g(a)). "This required notice is often referred to as the 'validation notice.'" *Koesler v. Beneficial Fin. I, Inc.*, 267 F.Supp.3d 873, 884 (W.D. Tex. 2016) (quoting *Garcia-Contreras v. Brock & Scott, PLLC*, 775 F.Supp.2d 808, 812 (M.D.N.C. 2011)).

If the consumer does not notify the debt collector within 30 days that the debt is disputed, "the collector may assume the debt to be valid." *Mahon v. Credit Bureau of Placer Cty. Inc.*, 171 F.3d 1197, 1202 (9th Cir. 1999) (quoting *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996); 15 U.S.C. § 1692g(a)(3)). But "[i]f the consumer notifies the debt collector in writing within the [30]-day period . . . that the debt . . . is disputed, . . . the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt or a copy of a judgment[.]" 15 U.S.C. § 1692g(b).

"[T]o prevail on [her] FDCPA claim, [Ortiz] must prove the following: (1) [she] has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Hunsinger v. Sko Brenner Am., Inc.*, 2014 WL 1462443, at *3 (N.D. Tex. Apr. 15, 2014) (Fitzwater, C.J.) (first alteration in original) (quoting *Browne v. Portfolio Recovery Assocs., Inc.*, 2013 WL 871966, at *4 (S.D. Tex. Mar. 7, 2013)). In her complaint, Ortiz alleges that ERC violated §§ 1692e, 1692e(2)(a), and 1692e(10) of the FDCPA by including the § 1692g validation notice in multiple debt collection letters.

Sections 1692e, 1692e(2)(a), and 1692e(10) provide, in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> (2) The false representation of . . . the character, amount, or legal status of any debt; . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer.

15 U.S.C. §§ 1692e(2)(a) & (10). When deciding whether a debt collection letter violates the FDCPA, the court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard." *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004). "That is, . . . [the court] must assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Id.* "At the same time [the court] do[es] not consider the debtor as tied to the very last rung on the intelligence or sophistication ladder." *Id.* (internal quotation marks and alteration omitted).

B

ERC does not dispute that Ortiz is the object of collection activity arising from a consumer debt (the first element of Ortiz's FDCPA claim) or that it is a debt collector within the meaning of the FDCPA (the second element). Instead, ERC contends that, as a matter of law, sending two sequential letters with a § 1692g validation notice does not violate the FDCPA (thus disputing the third element). Ortiz responds that ERC violated the FDCPA by including the 30-day validation notice in the February 2018 letter because the second

validation notice renders the language of the October 2017 letter "literally false," P. Br. 3, and the February 2018 letter misrepresented Ortiz's lawfully available rights because ERC was not obligated to honor the validation period in the second collection letter.

Although the Fifth Circuit has not addressed the precise issue before this court, several federal district courts have analyzed whether a debt collector violates the FDCPA by sending a debtor two debt collection letters that contain identical 30-day validation notices, and these courts have reached different conclusions. As set forth below, the court is persuaded by the authorities that reason that such conduct does not violate the FDCPA.

The majority—and current trend—of courts confronted with the issue of sequential letters agree that a debt collector does not violate the FDCPA by sending two debt collection letters with 30-day validation notices more than 30 days apart. *See, e.g., McCray v. Deitsch & Wright, P.A.*, 343 F.Supp.3d 1209, 1217 (M.D. Fla. 2018) (collecting cases and holding that debt collector did not violate § 1692e(10) by sending debtor two identical collection letters with 30-day validation notices); *Curry v. AR Res., Inc.*, 2016 WL 8674254, at *2-5 (D.N.J. Nov. 4, 2016) (collecting cases and concluding that sending a second letter containing a 30-day validation notice does not violate the FDCPA by misleading or deceiving the least sophisticated debtor); *Bridges v. Performant Recovery, Inc.*, 2015 WL 8773340, at *4 (M.D. Ga. Dec. 14, 2015) (holding that § 1692e was not violated where debt collector sent two letters with validation notices approximately one month apart because the letters were "not false or misleading; in fact, both letters provided the required FDCPA notices and did not diminish [the debtor's] rights to dispute the debt"); *Paige v. Waukesha Health Sys., Inc.*,

2013 WL 3560944, at *9 (E.D. Wis. July 11, 2013) (holding that §§ 1692e and 1692e(10) were not violated when debt collector sent two letters with validation notices approximately three months apart because "[t]he second validation notice, [received] after the [30]-day period required by statute expired, neither affected the validity of the first validation notice nor hampered the consumer's exercise of rights").

Courts that have reached a different conclusion have generally done so on different facts. For example, in *Maloney v. Alliance Collection Agencies, Inc.*, 2018 WL 5816375 (E.D. Wis. Nov. 6, 2018), a creditor sent a second validation notice to the debtor *within* 30 days of the first validation notice. The court declined to grant the defendant judgment on the pleadings and concluded that "when receiving the second notice, an unsophisticated consumer might be confused as to how much time remains to dispute the debt." *Id.* at *3. Unlike the creditor in *Maloney*, in the instant case ERC sent the second notice approximately four months after the first notice. Thus the "real risk that [the creditor's] second notice could mislead an unsophisticated consumer into forfeiting her rights under the FDCPA" is wholly minimized. *Id.* at *4. Indeed, in this case there was no risk that Ortiz could be misled into forfeiting her rights under the FDCPA because the second notice came three months after the expiration of the first notice's 30-day window.

Two other cases on which Ortiz relies, *Norton v. Wilshire Credit Corp.,* 1997 WL 33835145 (D.N.J. July 15, 1997), and *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521 (E.D. Pa. 1996), involved successive debt collection letters that contained other FDCPA infirmities, *e.g.*, statements that the debt collector would take legal action within 15

days and demands for immediate payment. More recent opinions—including one in the same court that decided *Norton*—have declined to follow the reasoning of *Norton* and *Adams*. *See Curry*, 2016 WL 8674254 at *3-4 (explaining that *Norton* and *Adams* are "distinguishable or unpersuasive," in part because they involved debt collection letters that were "laden with problematic language"); *see also Gesten v. Phelan Hallinan, PLC*, 57 F.Supp.3d 1381, 1387 (S.D. Fla. 2014) ("The Court . . . does not find *Adams* persuasive.").

One case that Ortiz cites, *Christopher v. RJM Acquisitions LLC*, 2015 WL 437541 (D. Ariz. Feb. 3, 2015), is on point and in Ortiz's favor. But the court is convinced that the greater weight of authority and general principles of law counsel against applying *Christopher*'s reasoning. In *Christopher* a debtor was sent two letters with 30-day validation notices more than 30 days apart. *Christopher* suggested that "[t]he unsophisticated debtor might have a lot of questions when he or she receives the second letter" and found a violation of § 1692e(10) as a matter of law. As ERC points out, *Christopher* is at odds with other district court cases, such as *Curry* and *Young v. G.L.A. Collection Co.*, 2011 WL 6016650 (S.D. Ind. Dec. 1, 2011), that explain that "simple 'confusion' in the colloquial sense is not legal 'confusion' as contemplated in the FDCPA." *Curry*, 2016 WL 8674254, at *5 (quoting *Young*, 2011 WL 6016650, at *2). The court finds the reasoning of cases like *Curry* and *Young* to be more persuasive[1] and applicable than *Christopher* because *Curry* and *Young*

---

[1]*Curry* and *Young* also engaged in a critical survey of pertinent case law, whereas *Christopher* did not. *Compare Curry*, 2016 WL 8674254, at *2-5, *and Young*, 2011 WL 6016650, at *2-3, *with Christopher*, 2015 WL 437541, at *8.

recognize that a debtor's potential "litany of questions" alone "does not amount to liability under the FDCPA." *Id.*

Although *Curry* and *Young* are not decisions of the Fifth Circuit or of a district court within this circuit, courts from within the Fifth Circuit concur that an application of the unsophisticated consumer standard does not require that any simple confusion equate to FDCPA liability. For example, in *Gomez v. Niemann & Heyer, L.L.P.*, 2016 WL 3562148 (W.D. Tex. June 24, 2016), the Western District of Texas discussed the status of FDCPA liability for false, deceptive, misleading, or confusing debt collection letters in the Fifth Circuit. *Id.* at *4-5. *Gomez* succinctly explained that "[t]he ultimate question in [Fifth Circuit cases involving FDCPA § 1692e claims] is whether the unsophisticated or least sophisticated consumer would have been led by the debt collection letter into believing something untrue that would have influenced [her] decision-making." *Id.* at *5. That is, to be viable, a claim under § 1692e requires more than a debtor's simple confusion.[2] Thus where, as here, the second debt collection letter could not have led the debtor into believing something untrue that would have influenced her decision-making, there is no violation of the FDCPA.

Further, Ortiz's reliance on *Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859 (S.D. Tex.

---

[2]Stated another way, "materiality should be a requirement for any action based on § 1692e." *Gomez*, 2016 WL 3562148, at *4 (citing *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 759 (7th Cir. 2009)). *Gomez* discusses how the "materiality standard" has developed in other circuits and how "some form of the standard appears to be taken for granted" in the Fifth Circuit. *Id.* at *5.

2011) (Rosenthal, J.), is misplaced. Ortiz maintains that the rationale of *Osborn* should lead the court to conclude, in part, "that a misrepresentation as to a legal right is still a violation of the FDCPA even when such misrepresentation afforded a consumer *broader* protections than those *required* by the FDCPA." P. Br. 13 (emphasis in original). Yet unlike the instant case, *Osborn* involved a debt collector's misrepresentation that failed to provide information required by statute and that could have adversely affected a debtor's rights. In *Osborn* the debt collector failed to notify the debtor that she must submit a dispute notification or request for verification *in writing*. *Osborn*, 821 F.Supp.2d at 869. The debt collector argued that this omission increased the debtor's rights because, in effect, the omission meant that the debtor could make a request orally (as well as in writing). *See id.* Contrary to the debt collector's (and Ortiz's) assertion, Judge Rosenthal explained in *Osborn* that "[t]he defendant's letter *did not expand* plaintiffs' statutory rights" by omitting the "in writing" requirements of § 1692g(a). *Id.* at 871 (emphasis added). Instead, Judge Rosenthal reasoned that, without the knowledge that requests for information must be in writing, the debtor "is not simply uncertain of her rights under the statute, she is completely unaware of them." *Id.* at 870 (quoting *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. 2002) (internal citation omitted)). In the present case there is no allegation or evidence that ERC omitted or misrepresented any requirement mandated by the FDCPA such that Ortiz was uncertain or unaware of her rights. The undisputed summary judgment evidence would only enable a reasonable jury to find that ERC sent two debt collection letters that each accurately stated all requirements set forth in § 1692g.

Ortiz maintains that ERC's practice "has the impact of misleading consumers into believing they have a statutory right to multiple validation periods" and that this conduct "has the result of leading the unsophisticated . . . consumer to act to their detriment." P. Br. 19. The court disagrees. The court finds the reasoning of the Southern District of New York applicable and persuasive:

> Here, the two letters created no reasonable possibility of confusion in derogation of the debtor's rights. The initial letter accurately notified Plaintiff that she had [30] days from receipt of that letter in which to request validation. The second letter also described the validation period and related rights accurately. It did nothing to suggest diminution of the initial period; if anything, it re-started the period, thereby effectively extending Plaintiff's opportunity to seek validation of the debt. Nothing in the FDCPA prohibits a debt collector from giving a debtor more than the requisite 30-day validation period, and there is no evidence that Defendant took any action violative of Plaintiff's validation rights—such as by seeking to collect the debt before fulfillment of a request for debt verification—before or after delivery of the notices.

*Brenker v. Creditors Interchange, Inc.*, 2004 WL 594502, at *2 (S.D.N.Y. Mar. 25, 2004) (footnote omitted). ERC's mailing of a second letter to Ortiz neither "vitiated the validity of the original notice" nor constituted conduct by a debt collector that could lead an unsophisticated consumer to act to her detriment. *Id.* at *3; *see also Curry*, 2016 WL 8674254, at *3 ("[I]f a debt collector properly informs a debtor of her right to have the debt validated by request in the next 30 days, and then subsequently extends that time period in a second communication, the debtor's initial substantive right to dispute the debt has not been impacted or mischaracterized."). Indeed, if the second letter *did* re-start the period of time

that the consumer had to request debt verification, then it only enlarged the consumer's rights. And if the second letter *did not* re-start the period of time available to the consumer, then the consumer is in the same position she was before the second letter was sent—she could not feasibly take any action to her detriment in response to the second letter.

Accordingly, the court grants summary judgment in favor of ERC on Ortiz's FDCPA claims.

C

The court reaches the same result concerning Ortiz's TDCPA claim.

Ortiz alleges that ERC violated Tex. Fin. Code Ann. § 392.304(8) by "misrepresenting the character, extent, or amount of a consumer debt," and Tex. Fin. Code. Ann. § 392.304(19) by "using [a] false representation or deceptive means to collect a debt or obtain information concerning a consumer." ERC maintains that it is entitled to summary judgment on Ortiz's TDCPA claims for the same reasons as stated *supra* § III(B), and as a result of the TDCPA's civil remedy provision.

"The conduct prohibited under the [TDCPA] is coextensive with that prohibited under the FDCPA, at least insofar as the same actions that are unlawful under the FDCPA are also unlawful under the [TDCPA]." *Gomez*, 2016 WL 3562148, at *6 (internal quotation marks and citation omitted) (collecting cases). ERC and Ortiz both agree that the court "should look to the FDCPA interpretation to guide the resolution of [Ortiz's TDCPA] claims." P. Br. 19. Thus for the reasons described *supra* § III(B), the court grants summary judgment in

favor of ERC on Ortiz's TDCPA claims.³  *See, e.g., Hsu v. Enhanced Recovery Co.*, 2018 WL 315758, at *6 (W.D. Tex. Jan. 5, 2018) (granting summary judgment on TDCPA claims "on the same grounds that it granted summary judgment in favor of Defendants against Plaintiff's federal claim" where neither party offered any authority interpreting the TDCPA provisions at issue).

Accordingly, ERC is entitled to summary judgment on Ortiz's claims under both the FDCPA and the TDCPA.

\* \* \*

For the reasons explained, the court grants ERC's motion for summary judgment and enters judgment in favor of ERC dismissing this action with prejudice.

**SO ORDERED**.

June 6, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

³Because the court holds that Ortiz's TDCPA claims fail on the same grounds as her FDCPA claims, the court does not address ERC's additional argument that Ortiz is not entitled to relief under the TDCPA because she cannot show that she is entitled to receive actual damages or injunctive relief.